[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This dissolution of marriage action was filed in New London Superior Court on August 9, 2001. The complaint seeks; dissolution of the marriage; joint custody of the minor children; equitable assignment of interest in the marital home; an equitable distribution of the marital CT Page 8539 estate; allocation of debt; exclusive possession and interest in certain vehicles; orders that the plaintiff be allowed to claim all three children as exemptions for tax purposes; that the defendant maintain a certain life insurance policy for the benefit of the minor children; and an equitable resolution of any unresolved issues.
The defendant filed a cross complaint on August 27, 2001 admitting all of the allegations in the complaint and seeking the following; dissolution of the marriage; sole custody of the minor children; child support; alimony; allowance to prosecute; an equitable distribution of the marital assets; and such other relief as the court finds equitable.
The parties agreed to keep custody and visitation issues out of the trial. Custody and visitation is per agreement of the parties signed and dated March 27, 2002 (Exhibit A attached.)
Said agreement adopts the guardian ad litem's proposed orders and parenting plan (Exhibit B attached), subject to the changes as stated in the March 27, 2002 agreement.
The parties further entered a stipulation (Exhibit C attached) signed and dated March 28, 2002 regarding two assets currently in the plaintiffs name;
1. PEBSCO 457K retirement (approximate value $42,000.00); and
2. EE savings bonds (approximate value $30,000.00).
Such funds are to be distributed equally among the three minor children in accordance with said stipulation.
A trial on all outstanding financial issues was held in Norwich Superior Court commencing on March 27, 2002. Seven witnesses testified at trial; James Blair, a real estate appraiser; Lieutenant Daniel Nutt and Sergeant Thomas Crowell of the Waterford Police Department; George Joseph, a real estate appraiser; John Mancure, a pension valuator and the parties. From their testimony and all of the exhibits introduced at trial, the court finds the following facts.
The parties were intermarried on May 27, 1987 in Groton, Connecticut. Three children are issue of the marriage; Jeffrey, born May 18, 1989; Daniel, born September 15, 1991; and Tricia, born November 17, 1995. The children require no special needs and are involved in sports, music and other activities.
The parties built the marital home on 77 Corrina Lane, Salem, CT Page 8540 Connecticut in 1995 on land they purchased from the profit on the sale of their first home on Sullivan Road. The property is encumbered by a mortgage of approximately $190,000.00 and a home equity loan of approximately $16,000.00. The total monthly payment for the mortgage, home equity loan and taxes is $2,170.00. The plaintiffs real estate appraiser found the fair market value of 77 Corrina Lane to be $440,000.00, while the defendant's appraiser found the fair market value to be $365,000.00. Based on the experts' testimony and all other relevant exhibits and testimony, the court finds the fair market value of 77 Corrina Lane, Salem, Connecticut to be $385,000.00.
The plaintiff asks the court to order the sale of the marital home and to order that the net proceeds be divided equitably. The defendant seeks to retain possession of 77 Corrina Lane until the youngest child reaches the age of 18.
The plaintiff is 42 years old. He graduated from high school and attended some college, but has no degree. He has been employed for the past 21 years as a police officer for the Waterford Police Department, currently holding the rank of sergeant. The plaintiff takes medication for high blood pressure and a thyroid condition. These conditions however have not affected his employability. The plaintiff earned approximately $62,000.00 in 2001 and $73,000.00 in 2000 from his employment at the Police Department.
The plaintiff is highly skilled in carpentry and construction-related specialties. He owns tools valued in excess of $13,000.00. Mr. Hauser completed the following work on 77 Corrina Lane; wired and completed the entire electrical system from street to basement; installed cabinets throughout the house; sided much of the exterior; installed hardwood floors, tiles, a pool, a deck and a kennel; and did some cement and landscaping work. He estimated that if he were compensated for his work on the marital home, the value of his labor would be approximately $87,000.00.
Mr. Hauser (doing business as Custom Cabinetry) has done some woodworking jobs in the past several years. He earned $11,000.00 in 2001 but his IRS return showed a $4,000.00 loss. The plaintiff deducted $77.00 per week from his income on his financial affidavit to reflect such loss.
The court finds that the $63,000.00 per year wages from the Waterford Police Department listed by the plaintiff on his financial affidavit, represents the lower end of his earning capacity from such employment. The court further finds that the plaintiff understated his earnings from his woodworking jobs. Based on these findings and all of the relevant evidence, the court has assigned the plaintiff an earning capacity of CT Page 8541 $75,000.00 gross per year (net $52,520.00 per year) and has used said amount in its financial calculations.
The defendant is 43 years old, has a college degree and is a registered nurse. She is employed in the pediatric intensive care unit of Lawrence and Memorial Hospital. The defendant works less than full-time and around the plaintiffs schedule so that she can be available for the family's three minor children. Mrs. Hauser has consistently earned around $50,000.00 per year working between 20 and 30 hours per week. Based on these facts and all the relevant evidence, the court finds that the defendant has a capacity to earn $55,000.00 gross per year (net $38,000.00 per year) and has used said amount in its financial calculations.
The major assets of the parties and the court's findings are as follows;
1. Children's EE savings bonds; approximate value $30,000.00. Those bonds are distributed in accordance with the previously mentioned stipulation (Exhibit C attached).
2. PEBSCO 457K; approximate value $42,000.00. This asset is distributed in accordance with the previously mentioned stipulation (Exhibit C attached).
3. Plaintiff's MERE retirement plan with a present value of approximately $40,200.00. The court notes that approximately 75% of this value was funded and accumulated during the marriage.
4. Defendant's Lawrence and Memorial (Invesco) 401(k) plan; its approximate present value is $20,200.00. The court notes that this asset was entirely accumulated and funded during the marriage.
5. Defendant's Lincoln Financial Group 401(k) also through Lawrence and Memorial Hospital; its approximate present value is $23,000.00. The court notes that this asset was entirely accumulated and funded during the marriage.
6. Defendant's IDEX Janus Growth A IRA; its approximate present value is $13,700.00. The court notes that this is a pre-marital asset that appreciated during the years of the marriage but was not funded during such years.
7. Defendant's IDEX Janus Growth T IRA; its approximate present value is $18,000.00. The court notes that this is a pre-marital asset that appreciated during the years of the marriage but was not funded during such years. CT Page 8542
8. Defendant's Western Reserve Life IRA; its approximate present value is $7,300.00. The court notes that this is a pre-marital asset that appreciated during the years of the marriage but was not funded during such years.
9. Defendant's 1200 shares of Pfizer stock; their approximate present value is $48,000.00. The court notes that this is a pre-marital asset that appreciated during the years of the marriage but was not funded from marital income during such years. The court further notes that the dividends from said stock, though owned by the defendant and her mother, were added to the marital income each year causing increased tax liability. The yearly dividend income from ownership of said stock is approximately $500.00 per year.
The cause of the marital breakdown was a contentious issue at trial. The plaintiff claims that the defendant's interaction with a married male friend, (T), as well as the breaking of her promise to discontinue correspondence with T, was the cause of the breakdown of the marriage. The evidence showed that the defendant had known T since she was nine years old. They maintained an unromantic friendship until her 20's when they lost touch. At some point, T got married, had children and moved to Switzerland with his family where he currently resides. The defendant learned that T came to Connecticut once or twice a year, as he owns a tree farm in Franklin, so she made arrangements to meet him there in December of 1998. She met T at the farm for a short time accompanied by at least one of her children and with the plaintiffs knowledge. T and the defendant agreed to correspond and shortly after his return to Switzerland, T sent a letter to the defendant. The plaintiff disapproved of the correspondence and after she received a second letter in March of 1999 from T, the defendant agreed to stop communication with T. The defendant met T at the tree farm in the Spring of 2000 where they looked at photos of each other's family. On April 4, 2000 the defendant sent T an e-mail to which he responded. The plaintiff discovered the e-mail when he made an unauthorized entry into the defendant's e-mailbox. This communication caused the plaintiff to leave the marital home for two days. There was no evidence of any communication between the defendant and T from April 4, 2000 to the date of the filing of this action. The plaintiff surreptitiously gained access to the defendant's diary some time in 2001. The court notes that there were no references to T in her diary.
The defendant originally blamed the breakdown of the marriage on her continued communication with T, the plaintiffs jealousy and his obsessive behavior. At the time of trial, the defendant claimed that her husband's relationship with a female co-worker (P) was the most significant cause CT Page 8543 of the marriage's breakdown. The evidence showed that after the April 4, 2000 e-mail, the plaintiff began to keep a close eye on the defendant. He bought her a cell phone which had to be on at all times and checked on her constantly. He began to treat her abusively calling her demeaning names and generally treating her in a disrespectful manner. In the Spring of 2001, the plaintiff had P's phone number as the first number on the speed-dial feature of his cellular phone. In June of 2001 the plaintiff helped P move into her new house and shortly thereafter purchased a mattress for her on his credit card. In June and July of 2001 the plaintiff came home late, took off during the evening and was often gone during the day when he would have otherwise been home. The plaintiffs credibility was impeached on this issue when on cross examination he admitted that he slept over P's house on occasions after the filing of the divorce, after initially claiming on direct examination that he never slept there.
Based on all these facts and all of the testimony and exhibits offered at trial, the court finds the plaintiffs loss of affection for his wife and thus the attention given to P was the primary cause of the irretrievable breakdown of this marriage. The contents of the e-mail message led to no inferences by the court beyond the innocuous message it bore. The evidence did not support an inappropriate relationship between the defendant and T. It appears clear that the husband's overreaction to his wife's communication with T served as a cover and rationalization for his loss of affection for the defendant and for his interest in P.
The court finds that it has jurisdiction; that the complaint was properly served; the matter has been pending for more than ninety days; one of the parties resided in the state of Connecticut for one year prior to the filing of this action. The other allegations in the complaint are proved including the fact that the marriage has irretrievably broken down. The court will dissolve the marriage based on such breakdown.
The court in entering its other orders, has considered the provisions of Connecticut General Statutes §§ 46b-40, 46b-56, 46b-62, 46b-81,46b-82 and all other relevant statutes as well as all of the evidence adduced at trial.
ORDERS
CUSTODY AND VISITATION
The court adopts and incorporates by reference the GAL Parenting Plan (Exhibit B attached) making that document together with the agreement of the parties dated March 27, 2002 (Exhibit A attached) the order of the court on Custody and Visitation. CT Page 8544
a. The parties shall share joint legal custody of the minor children; primary residence for school purposes only, shall be with the mother.
b. On all matters of importance relating to the children's health education and general welfare the parties shall confer with a view toward adopting and following a harmonious policy.
c. Father shall have the following access with the minor children.
1. On those days mother is scheduled to work: Mother shall to the extent possible schedule her workdays on days the father is not scheduled to work. She shall provide him with at least two weeks notice of her schedule. Father shall be responsible for childcare arrangements on those days when he is not working if he is unavailable to provide such care.
2. Reasonable access at other times upon twenty-four hours notice to the mother.
d. Holiday access shall be as mutually agreed.
e. The parties shall speak on the first Sunday of the month to discuss the next month's schedule, including the children's activities, parents' work schedule, and child care issues.
f. The parties further agree that prior to any litigation over the custody of Jeffrey, the parties shall within two weeks submit to mediation on the issue of Jeffrey's residence.
CHILD SUPPORT
The plaintiff shall pay child support in the amount of $306.00 per week to the defendant. Such amount conforms to Connecticut's Child Support Guidelines. Said sum shall be secured by contingent wage withholding.
ALIMONY
The plaintiff shall pay to the defendant alimony in the amount of $350.00 per month on the first of each month commencing on August 1, 2002 and continuing for 120 consecutive months (10 years). Said alimony is non-modifiable as to term only and shall terminate sooner on the first of occurrence of any one of the following events;
a. death of either party
b. remarriage of the defendant CT Page 8545
c. cohabitation by the defendant by statute.
LIFE INSURANCE
Each party shall procure if necessary and maintain a life insurance policy in the amount of $150,000.00. name their three minor children as equal beneficiaries, and name the surviving spouse as trustee. Said policies shall be in effect by September 1, 2002 and must be maintained until the youngest child reaches the age of 18 years old. Each party shall execute authorization for the other to verify the status of the policies.
HEALTH INSURANCE
The plaintiff shall maintain health insurance coverage for his minor children as is available through his employment. Each party shall maintain their own health insurance through their respective place of employment at their own cost.
Unreimbursed medical expenses shall be divided each calendar year by the defendant paying 60% of such costs and the plaintiff paying 40% of such costs after the defendant pays the first $100.00 of such unreimbursed medical costs. Such a split is found to conform to the Connecticut Child Support Guidelines.
DAY CARE
Qualified Day Care Cost, as defined by the Connecticut Child Support Guidelines, shall be borne by the defendant paying 60% of such cost and by the plaintiff paying 40% of such costs. Such a split is found to conform to said Connecticut Child Support Guidelines.
DEPENDENCY EXEMPTION
The dependency exemptions for purposes of State and Federal Income Tax purposes shall be claimed in accordance with the following:
a. When three dependants are available;
The plaintiff may claim two exemptions for tax returns where the income reported was earned in an even numbered year.
The defendant may claim two exemptions for tax returns where the income reported was earned in an odd-numbered year. CT Page 8546
b. When two dependents are available:
The parties may each claim one dependent.
c. When one dependent is available:
The parties shall alternate years with the plaintiff using the exemption first. Such exemptions shall not be available to any party who is more than three consecutive weeks behind in his/her child support payment.
AUTOMOBILES
The plaintiff shall have ownership of the Dodge Ram truck and the 1994 Dodge Caravan with all of their encumbrances and liabilities. The defendant shall have ownership of the 2000 Dodge Caravan with all of its encumbrances and liabilities.
DEBTS
Each party shall be responsible for the debts as listed on their respective financial affidavits dated March 27, 2002.
PERSONAL PROPERTY
a. The plaintiff shall retain possession of the woodworking equipment as recited on page 5 of Plaintiff's Exhibit 6 which he valued at approximately $13,500.00.
b. All other marital property shall be divided equitably by the parties. Any disputes shall be submitted to binding mediation. The cost of any such mediation shall be shared equally by the parties.
ATTORNEY FEES
Each party shall be solely responsible for the payment of his/her attorney. Each party shall be responsible to pay 50% of the attorney fees for the services of Tammie Gildea, Esq., counsel for the minor children, which total is $3,210.00.
REAL ESTATE
The plaintiff shall quitclaim his right, title and interest to the marital home on 77 Corrina Lane in Salem, Connecticut. The defendant shall execute a $90,000.00 mortgage deed and note to the plaintiff, bearing interest at the rate of 4%, payable upon the first occurrence of CT Page 8547 any one of the following:
a. the youngest child reaches the age of 19 years of age
b. the death or remarriage of the defendant
c. the sale of the residence.
The defendant shall hold the plaintiff harmless for any mortgages, liens, taxes or insurance on 77 Corrina Lane, Salem, Connecticut. The court shall retain jurisdiction over the real property in this paragraph to ensure that the purpose and intent of the paragraph is carried out.
MAJOR ASSETS
a. PEBSCO 457k and EE Bonds:
Said assets shall be distributed in accordance with the agreement of the parties that was signed and filed with the court on March 28, 2002.
Such funds with an approximate value of $42,000.00 and $30,000.00, respectively, shall be held in trust for the benefit of the minor children's college tuition costs. The parties are free to agree to the specific term of the trust arrangements.
The funds shall only be used after grants, scholarships and low interest loans are exhausted. Each child shall benefit equally from such funds with 1/3 of any remaining funds going to each child at the age of 25 years.
If there is no agreement of the parties, both parties shall be trustees in any court-ordered resolution. The court shall retain jurisdiction over those funds in order to enforce the intent of the parties.
b. MERF Retirement Plan
The plaintiff shall transfer to the defendant by way of Qualified Domestic Relations Order (QDRO) 37.5% of the present value of his MERE retirement plan. Said QDRO shall be prepared by the defendant's attorney. The defendant shall be responsible for any tax consequences from such transfer. The defendant shall pay for the cost to prepare the QDRO. The court shall retain jurisdiction to ensure that the purpose and intent of this paragraph is carried out and the court shall have the authority to modify this paragraph if required to comply with the instructions of the plan administrator. CT Page 8548
c. Lawrence and Memorial (Invesco) 401(k) Plan
The defendant shall transfer to the plaintiff by way of QDRO, 50% of the present value of her Invesco 401(k) plan. Said QDRO shall be prepared by the plaintiffs attorney. The plaintiff shall be responsible for any tax consequences from such transfer. The plaintiff shall pay the cost to prepare said QDRO. The court shall retain jurisdiction to insure that the purpose and intent of this paragraph is carried out and the court shall have the authority to modify this paragraph if required to comply with the instructions of the plan administrator.
d. Lincoln Financial Group 401(k)
The defendant shall transfer to the plaintiff by way of QDRO 50% of the present value of the Lincoln 401(k) plan. Said QDRO shall be prepared by the plaintiffs attorney. The plaintiff shall be responsible for any tax consequences of such transfer. The plaintiff shall pay the cost to prepare said QDRO. The court shall retain jurisdiction to insure that the purpose and intent of this paragraph is carried out and the court shall have the authority to modify this paragraph if required to comply with the instructions of the plan administrator.
e. Janus A IRA; Janus T IRA; Western Reserve IRA. Pfizer Stock The defendant shall retain ownership of all of the above assets.
OTHER ASSETS
a. The plaintiff shall retain ownership of the Liberty Bank joint savings account.
b. The defendant shall retain possession of the People's Bank account and the Lawrence and Memorial Hospital Credit Union account.
Scarpellino, J.
[EDITORS' NOTE: EXHIBIT A IS ELECTRONICALLY NON-TRANSFERRABLE.]
[EDITORS' NOTE: EXHIBIT B IS ELECTRONICALLY NON-TRANSFERRABLE.]
DOCKET NO. FA-00-0559616S SUPERIOR COURT RICHARD C. HAUSER JD OF NEW LONDON VS. AT NEW LONDON KATHLEEN A. HAUSER MARCH 28, 2002
 PARENTING PLAN
CT Page 8549
1) The parties shall share joint legal custody of the minor children, primary residence shall be with the mother, for school purposes only.
2) On all matters of importance relating to the children's health, education, and general welfare, the parties shall confer with a view toward adopting and following a harmonious policy.
3) The parties acknowledge that their respective work schedules are not conducive to setting a specific schedule of access, and that a flexible access schedule is in the best interests of the children. Furthermore, they agree it is important to maximize the amount of the time the children spend with a parent. They also agree that to the extent possible, the children should be with family on those occasions when both parents are working. In order to accomplish these goals the parties acknowledge they will need to communicate on a regular basis.
4) Father shall have the following access with the minor children:
a) On those days mother is scheduled to work. Mother shall to the extent possible schedule her workdays on days the father is not scheduled to work. She shall provide him with at least 2-weeks notice of her schedule. Father shall be responsible for childcare arrangements on those days he is not working if he is unavailable to provide same.
b) Reasonable access at other times upon 24-hour notice to the mother.
5) Holiday access shall be as mutually agreed.
6) The parties shall speak on the first Sunday of the month to discuss the next month's schedule, including the children's activities, parents work schedule, and child care issues.
Guardian Ad Litem
 By: ___________________ Tammie L. Gildea, Esq.
 Tammie L. Gildea, P.O. Box 368, New London, CT 06320 Telephone (860) 444-2828, Juris No. 402883
[EDITORS' NOTE: EXHIBIT C IS ELECTRONICALLY NON-TRANSFERRABLE.]